UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOGAN SIMIOS, and VICKY STEVENS and OMAR HASAN, individually and on behalf of all persons similarly situated, )))))) | |
| Plaintiffs, )) | |
| v. )) | Case No. 05 C 5235 |
| 180SOLUTIONS, INC. and )) JOHN DOES 1-100 )) | Judge Virginia M. Kendall |
| Defendants. )) | Jury Demanded |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS COUNT VIII
OF THE AMENDED CLASS ACTION COMPLAINT**

**I.   INTRODUCTION**

Defendant 180solutions' ("180's") claim that the term "spyware" has no "meaningful or concrete definition"—and thus this Court is forbidden even to exercise jurisdiction over Plaintiffs' Count VIII, which employs a definition of "spyware"—is bluntly contradicted by 180's own behavior. Just last year, for example, 180 told another court just the opposite, *i.e.* that "spyware" enjoys a ***"common meaning in the industry."*** Similarly, 180 has repeatedly, albeit falsely, told consumers that it does not use "spyware"—a denial that necessarily presumes a commonly-accepted definition of the term.

The truth is that 180 is well aware that "spyware" has a well-understood definition, and that is the same definition employed by Plaintiffs in their Count VIII. That 180 simply does not like this definition as applied to its business practices does not show the absence of an "actual controversy," but rather proves the very existence of one.

Moreover, the relationship of Plaintiffs' Count VIII to the rest of their complaint proves the "useful purpose" of, and indeed the need for, the requested declaratory relief. Should this Court declare that 180 uses "spyware"—as that term is defined by the industry, experts, at least one other federal court and paragraph nine of Plaintiffs' Amended Complaint—then 180 will have been shown to have substantially violated the liability standards found in the other laws

(*e.g.*, Computer Fraud and Abuse Act, Wiretap Act, Trespass) invoked in Plaintiffs' Amended Complaint.

This is precisely the "useful purpose" for which declaratory judgments are intended, particularly where, as here, a class of citizens is victimized first by unlawful corporate behavior, and then by the corporation's false denials of wrongdoing. No federal court need, or, respectfully, should, consider itself powerless to address such behavior and the harm it causes.

## II. STATEMENT OF FACTS

180 utilized illegal and unethical practices to install, and prevent the deletion of, "spyware" on 20 million computers. (Amd'd Complt., ¶ 13). Such spyware is bundled with legitimate software programs (such as screensavers), or is installed through security exploits, "force-installs", child pornography, racist videos, and in various other deceptive manners. (Amd'd Complt., ¶¶ 17, 19, 22, 45). The Center for Democracy and Technology (a Washington D.C.-based non-profit public policy organization) recently concluded that 180 "deliberately and repeatedly attempted to dupe Internet users into downloading intrusive advertising software . . . even after being warned by its own auditors that its practices were unethical, and in several cases, illegal." (Amd'd Complt., ¶ 18). Once installed, 180's "spyware" impedes computer usage and damages computers. (Amd'd Complt., ¶ 29).

180 makes money through spyware by tracking the Internet behavior of consumers (members of the Putative Classes) for the benefit of paying advertisers. (Amd'd Complt., ¶ 5). In promoting its spy-services, 180 has bragged that it provides advertisers with a "360-degree view of the user's behavior—24 hours a day, 7 days a week." (Amd'd Complt., ¶ 10).

180 has lied to its consumers (members of the Putative Classes) for years about what is on their computers. For example, despite the fact that its software contains "spyware", 180 displays the following false message to computer users:



(Amd'd Complt., ¶¶ 23-24).

Despite its use of "spyware", 180 not only denies using it, but pursues or threatens litigation against those anti-spyware companies which label 180's software as "spyware." (Amd'd Complt., ¶¶ 85-86). For example, last year, 180 filed a lawsuit seeking an injunction against an anti-spyware company called Zone Labs from "categorizing 180's products as

2

spyware or otherwise associating 180's products with spyware." (*180 v. Zone Labs, L.L.C.*, at 5; Attached hereto as Exhibit A).[1] 180's actions greatly impact members of the Putative Classes who are prevented from making use of anti-spyware programs to identify 180's spyware on their computers. (Amd'd Complt., ¶ 85).

As a result of 180's false denials of "spyware" use, and efforts to intimidate those who say 180 uses "spyware", members of the Putative Classes have been deprived of learning the true nature of the software that exists on their computers, and are unable to make an informed decision about whether to remove the "spyware". (Amd'd Complt., ¶¶ 20, 63-65, 67-68, 88).

## III. STANDARD FOR A DECLARATORY JUDGMENT IN CLASS LITIGATION

The Declaratory Judgment Act ("DJA") confers upon federal courts the power to "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). In class action litigation, declaratory relief is particularly appropriate where the declaration relates to a common practice involving the putative class (in this case, the mischaracterization of the software which 180 installed on each class member's computer). *See generally, Fontana v. Elrod*, 826 F.2d 729, 732 (7th Cir. 1987) ("Class actions under FED. R. CIV. P. 23(b)(2) . . . are primarily designed for injunctive and declaratory relief."). In *Gammon v. GC Services Limited Partnership*, 162 F.R.D. 313, 315-16 (N.D. Ill. 1995) (Castillo, J.), a putative class of more than four million persons moved for class certification in their suit against defendant debt collection agency over whether language in defendant's standard debt collection letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. The Gammon plaintiffs sought, *inter alia*, a declaration that the debt collection letter violated the FDCPA. Judge Castillo authorized their request, explaining that:

> In the instant case, a declaratory judgment would settle the issue of the legality of GC's behavior with respect to the entire class. Given that the very purpose of

---

[1] Plaintiffs' reference to and attachment of 180's *Zone Labs* Complaint is proper because: 1) Plaintiffs' specifically alleged that 180 had filed suit "against those characterizing its computer files as spyware," (Amd'd Complt. ¶ 84), and this allegation is central to Plaintiffs' claim for declaratory relief. *See Blau v. Harrison*, No. 04 C 6592, 2006 WL 850959, at *1 (N.D. Ill. March 24, 2006) (Hibbler, J.) (when reviewing a motion to dismiss, "[t]he Court . . . may consider matters outside the pleadings without converting the motion to dismiss into one for summary judgment if they are referred to in plaintiff's complaint and are central to plaintiff's claim") (citing *Rosenblaum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)); 2) The Court may take judicial notice of 180's *Zone Labs* Complaint. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (citing cases); and 3) As 180 contends that the Court lacks subject matter jurisdiction over Plaintiffs' claim, "the court may look beyond the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995); *see also, ASI Acquisition, LLC v. Rayman*, No. 01 C 165, 2002 WL 335311, at *1 (N.D. Ill. Feb. 28, 2002) (Coar, J.).

> class actions is to promote judicial efficiency and economy, this Court finds Gammon's request for declaratory judgment to be appropriate.

*Id.* at 320 (internal citations omitted) (emphasis added).

Where, as here, the Court considers a motion to dismiss a declaratory judgment claim for lack of subject matter jurisdiction, the Court must accept as true all of Plaintiffs' well pled factual allegations and draw all reasonable inferences from those allegations in Plaintiffs' favor. *See Wilson Sporting Goods Co. v. Nicklaus Golf Equip. Co., L.L.C.*, No. 03 C 1520, 2004 WL 783069, at *3 (N.D. Ill. Jan. 8, 2004) (Grady, J.) (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). "This standard means that if any set of facts, even hypothesized facts, could be proven consistent with the complaint, then the complaint['s request for declaratory relief] must not be dismissed." *Consol. City of Indianapolis v. Ace Ins. Co. of N. America*, No. 1:04-CV-01097-LJM-TA, 2004 WL 2538648, at *1 (S.D. Ind. Sept. 20, 2004).

## IV. ARGUMENT

180 seeks dismissal of Count VIII for the following reasons: First, because, according to 180, the term "spyware" has "eluded any meaningful or concrete definition" (Def.'s Mem. Supp. Dism. at 5), there can be no "actual controversy" that concerns its definition, and this Court is therefore forbidden to exercise jurisdiction over Count VIII. Second, even if there is an "actual controversy" vesting this Court with jurisdiction, "no useful purpose" would be served by its exercise, since resolution of Count VIII, according to 180, has nothing to do with any of the other claims in the case, but rather serves exclusively "[Plaintiffs'] public vilification campaign against 180." (Def.'s Mem. Supp. Dism. at 6).

Each of 180's arguments is false, for the reasons set forth below.

### A. Plaintiffs' Claim for Declaratory Judgment Involves an "Actual Controversy".

#### 1. 180 Should Be Estopped From Denying That "Spyware" Has a "Common Meaning".

Today, 180 argues that no "actual controversy" exists, claiming that "spyware" has no accepted definition. (Def.'s Mem. Supp. Dism. at 2, 5).

But 180 has apparently forgotten that just last year—and in a courtroom, no less—it announced that "spyware" indeed had a definition so clear that a company could be guilty of defaming 180 just for saying that 180 used "spyware". In that case, 180 filed a complaint

4

alleging that the term "spyware" enjoys a *"common meaning in the industry."* (*180 v. Zone Labs, L.L.C.*, at 5; Attached hereto as Exhibit A) (emphasis added).

180 may not invoke a supposedly crystal-clear definition of "spyware" in order to seek relief from one court, and then turn around and claim "spyware" to be definitional mush when it has to play defense. *See, e.g., Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742 (5th Cir. 1988) ("[T]here is a well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party."); *E. Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1002 (7th Cir. 1997). 180's use of "spyware" in its *Zone Labs* case proves conclusively 180's belief that the term "spyware" is susceptible of definition in a courtroom, and 180 therefore should be estopped in this courtroom from saying otherwise.

As much is further illustrated by 180's denials—on at least a dozen occasions—of Plaintiffs' allegations that 180 uses "spyware". (*See* Def.'s Answer, at ¶¶ 6, 10-15, 17, 20-21, 23-24, 27, 53; Attached hereto as Exhibit B). If, as it claims in its motion, 180 really does not know what "spyware" means, it in good faith could not have repeatedly denied using it. Similarly, 180's repeated – albeit false – denials to consumers that it uses "spyware" illustrate that the company knows the term has an accepted definition.

### 2. 180's Disagreement Over the Alleged Definition of Spyware is Not a Basis for Dismissal.

The duplicitous position that 180 has taken exposes its real argument here, *i.e.*, not that "spyware" cannot be defined, but that 180 does not like Plaintiffs' definition for it. Setting aside that there is no difference of any consequence between the "spyware" definitions referenced in Plaintiffs' Amended Complaint, and further setting aside that Plaintiffs' definition at paragraph nine of the Amended Complaint agrees with that used by countless sources in the field[2], 180's argument here boils down to the ridiculous. 180 is saying that because 180 controverts Plaintiffs' definition of "spyware" there can be no "actual controversy".

---

[2] For example, in *Federal Trade Commission v. MaxTheater, Inc.* No. 05-CV-0069-LRS, 2005 WL 1027121, at *2 (E.D. Wash. Mar. 31, 2005), the Court adopted a definition of "spyware" pursuant to its entry of a preliminary injunction that is similar, and indeed broader, than that proposed by Plaintiffs here. "Spyware" was there defined to include, among other things, adware and programs which "secretly install on your computer without your knowledge" and which may cause many unwanted intrusions such as advertisements and tracking computer users' online activity, among other unwanted intrusions. *See also, Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1222 n.2 (N.D. Ill. 2005) (Gettleman, J.) (defining "spyware", based upon an allegation in the Plaintiff's complaint, which is nearly identical to that of the definition utilized in this case).

5

180's contention that there is no "actual controversy" here as to the definition of "spyware" is false not only as a matter of fact (shown above and as alleged in the complaint), but also as a matter of law, as federal courts routinely take jurisdiction of claims requiring them to chose from among contested definitions of terms. *See, e.g., Oneida Tribe of Indians of Wisconsin v. State of Wisconsin*, 951 F.2d 757, 761 (7th Cir. 1991) (examining multiple dictionaries and encyclopedias for the meaning of the term "lotto"); *see also Employers Ins. of Wausau v. Burlington N. and Santa Fe Ry Co.*, 336 F. Supp.2d 637, 641, 643-45 (E.D. Tex. 2003) (finding an actual controversy existed despite the need to define contested terms). Thus, it is not surprising that 180 failed to cite even one case to support its argument that the existence of different definitions of "spyware" deprive this Court of jurisdiction to hear Count VIII.[3]

### B. Plaintiffs' Declaratory Judgment Claim Serves a Critically Important and "Useful" Purpose.

180's objection that the resolution of Count VIII would serve "no useful purpose" attempts to obscure the reality that such resolution would have "too much" of a purpose to suit 180.

*First*, contrary to 180's argument, this Court's resolution in Plaintiffs' favor of Count VIII would have the ultimate "useful purpose": it would single-handedly decide in Plaintiffs' favor, or at least sharply limit the issues remaining to be resolved concerning, 180's liability in Counts I, II, III, IV, and VI. This is demonstrated by reference to the conduct forbidden by the laws at issue in each of these counts.

- Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count I): Provides for a claim against one who "intentionally accesses a computer without authorization . . . and thereby obtains *** information." (Amd'd Complt., ¶ 40).
- Wiretap Act, 18 U.S.C. § 2707, 2520 (Count II): Provides for a claim against one who "intercepts" an "electronic communication".
- Common Law Trespass to Chattels (Count III): Provides for liability for exceeding authorized access to personal property. *See generally*, RESTATEMENT (SECOND) OF TORTS § 256 (1965) ("One who uses a chattel with the consent of another is subject to

---

[3] The cases 180 does cite in other parts of its memorandum involve factually dissimilar circumstances. *Basic v. Fitzroy Engineering*, 949 F. Supp. 1333 (N.D. Ill. 1996) and *Vickers v. Henry County Savings & Loan Assoc.*, 827 F.2d 228 (7th Cir. 1987) are readily distinguishable in that both involved requests for declaratory judgments based on hypothetical claims. *See Vickers*, 827 F.2d at 231; *see also Basic*, 939 F. Supp at 1337. By contrast, Plaintiffs' declaratory judgment claim does not call for such an advisory opinion as it arises from 180's past conduct and thus plainly presents an actual controversy. As "all of the acts that are alleged to create liability already have occurred," this Court should have "little difficulty in finding an actual controversy." 10B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ.3d § 2757; *see also, ASI Acquisition, LLC*, 2002 WL 335311, at *3-4 (finding that an actual controversy existed where the facts giving rise to the disagreement at issue had already occurred).

6

liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent . . . .").
- Consumer Fraud Act, 815 ILCS 505/2 (Count IV): Provides for liability if a defendant engages in "deception", "fraud", "false pretense", "false promise", or the suppression or omission of a material fact.
- Computer Tampering, 720 ILCS 5/16D-3 (Count VI): Provides a cause of action against a defendant who "without . . . authorization . . . or in excess of the authority granted to him . . ." installs certain software on a computer.

Should this Court find that 180 uses "spyware" as Plaintiffs (not to mention many others in the industry) have defined the term, it is difficult to imagine that 180 could be said to not have violated these laws. For example, by representing that its products contain "no spyware" (when they actually do), 180 "lies to computer users about its spyware" in violation of the Consumer Fraud Act. (Amd'd Complt., ¶¶ 23-24, 61). Likewise, consumers cannot possibly be said to have consented (as is examined in Counts I, III, and VI) to spyware installations if they were told 180's software contained no "spyware".

Accordingly, should the Court make the declaration requested by Plaintiffs' Count VIII, this controversy—or at least a substantial portion of it—would be settled. *See Schauf v. Mortgage Bankers Serv. Corp. et al.*, No. 01C4442, 2001 WL 1539051, at *3 (N.D. Ill. Nov. 29, 2001) (Kocoras, J.) (opting to adjudicate a proposed declaratory judgment claim which "would help settle the controversy" which related, in part, to misrepresentation and concealment allegations); *see also, Gammon*, 162 F.R.D. at 315-16 (deciding declaratory relief was appropriate as it would "settle the issue of the legality of [defendant's] behavior with respect to the entire class.").

**Second,** the Putative Classes also seek injunctive relief in the Amended Complaint. Such injunctive relief would mandate that 180 notify class members that "spyware" is currently installed, or was once installed, on their computers by 180. Thus, whether 180 utilized "spyware" is also integral to Plaintiffs' request for injunctive relief.

**Third,** as explained above, Plaintiffs have alleged that 180's litigation harassment and intimidation has impacted putative class members and those in the industry with its false denials, and threats—sometimes acted upon, as in the *Zone Labs* case—to make trouble for those who "call a spade a spade". (*See* Amd'd Complt. ¶¶ 85-88). Predictably, this behavior by 180 has led to significant injustice, including, as Plaintiffs have alleged, that class members are deprived of the truth about the cause of their computer problems, and thus of information necessary to

7

remove the spyware. (*See* Amd'd Complt. ¶¶ 85-88).[4] As Judge Gettleman recognized "[m]any ... computer users consider ... Spyware an Internet scourge." *DirectRevenue*, 384 F. Supp. 2d at 1230. The Putative Classes should be empowered to make an informed decision as to whether to rid themselves of just such a scourge—180's "spyware".

The above demonstrates that Plaintiffs' Count VIII satisfies the "useful purpose" test. No federal court should believe that it is powerless to do anything to help a class of consumers who are entitled to know the truth of the software that was unlawfully installed onto their computers. *See generally, Fontana*, 826 F.2d at 732 ("Class actions under Fed.R.Civ.P. 23(b)(2) . . . are primarily designed for injunctive and declaratory relief"); *see also, Gammon*, 162 F.R.D. at 315-16 (authorizing declaratory relief in class litigation is appropriate as a means of promoting efficiency); *and Johnson v. Rohr-Ville Motors, Inc.*, 64 F. Supp. 2d 737, 740 (N.D. Ill. 1999) (request for a declaration that certain insurance was not worthless presented a justiciable controversy where such declaration would relieve "uncertainty and insecurity" in the parties' legal relationship).

The five factors examined to find a "useful purpose" include: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would . . . clarify *** the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or to 'provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *Nucor Corp. v. Aceros y Maquilas De Occidente*, 28 F.3d 572, 579 (7th Cir. 1994).

As discussed above, the first factor (whether the judgment would settle the controversy) clearly is met because it would likely dispose of much or all of Counts I, III, and VI. All of the

---

[4] For example, in an article entitled *"Don't Call it Spyware"*, 180 admitted to having "forced" its "critics" to stop associating it with "spyware":

> [180's] software ... is classified by a number of companies, including Microsoft, CA, and Zone Labs, as "spyware," a term not likely to endear the company to most computer users.
>
> 180 vigorously disputes the tag—often with lawsuits—and says it has forced a number of its critics to back down.

http://www.redherring.com/Article.aspx?a=15435&hed=Don%E2%80%99t%20Call%20It%20Spyware (last visited on June 6, 2006) (Attached hereto as Exhibit C). Reference to this article is permissible. *See Blau*, 2006 WL 850959, at *1; *Ezekiel*, 66 F.3d at 897.

other factors examined by courts to determine whether to exercise jurisdiction over a declaratory judgment also weigh exclusively in Plaintiffs' favor. A declaration that 180 utilized "spyware" would clarify the legal relations between Plaintiffs and 180. In *Shauf*, the Court found that defendant's requested counterclaim "would necessarily serve a useful purpose in clarifying the legal relations at issue" where adjudication of the declaratory judgment claim would establish whether defendant mortgage broker's relationship with defendant lender resulted from illegal bribes or legitimate behavior. 2001 WL 1539051, at *3. Similarly, here, adjudication of Plaintiffs' declaration will determine whether or not 180 relationship with Plaintiffs was based on deceptive behavior, lies, and/or overreaching. (*See* Amd'd Complt. ¶¶ 1, 5(b), 17, 20, 23). It would also allow members of the Putative Classes to make an informed decision about whether they desire to even maintain a relationship (*i.e.*, whether to remove the "spyware") with 180. *See ASI Acquisition, LLC*, 2002 WL 335311, at *3 (approving of Plaintiffs' attempt to "establish the legal rights and obligations of the parties" by way of declaratory relief which called for a determination as to whether or not Plaintiffs were terminated for cause). Contrary to 180' assertion, there is nothing "academic" about clarifying the legality and propriety of a corporation's conduct toward millions of its customers. (Def.'s Mem. Supp. Dism. at 4).

The remaining three considerations likewise favor the Court's resolution of Plaintiffs' declaratory judgment claim. This case does not involve a race-to-the-courthouse or any attempt by Plaintiffs to engage in procedural fencing. *See, e.g., Northland Ins. Co. v. Gray*, 240 F. Supp. 2d 846, 850 (N.D. Ind. 2003) (refusing to dismiss plaintiff insurer's declaratory judgment action where defendant insureds failed to prove that the insurer filed the suit to deprive them of their choice of forum). Nor does it involve a pending state court case; thus, the fourth consideration—friction between federal and state courts—is also inapplicable here. *See Schauf*, 2001 WL 1539071, at *3. Finally—concerning the fifth factor—the requested "spyware" declaration is a critically important part of the relief sought as it would afford 180 and its customers a clear perspective on how to behave in the future. *Id.* (finding defendant's counterclaim for a declaratory judgment more effective than a remedy lacking such a declaration because, *inter alia*, the declaration would "allow the two parties to decide how to proceed in the future.").

*Long v. Chicago Transit Authority*, 985 F. Supp. 836 (N.D. Ill. 1997), cited by the 180 to support its contention that Plaintiffs' declaratory claim "smacks of . . . improper tactical maneuvering," involved facts so vastly different from those at issue as to render the case completely inapposite. In *Long*, Plaintiff's request for a declaratory judgment was an attempt

"to make an end run around the requirements that an ADA plaintiff file a charge with the EEOC and receive a right to sue letter before filing an action in federal court." *Id.* at 842. By contrast, Plaintiffs do not seek declaratory relief to avoid any similar administrative hurdles.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Honorable Court deny Defendant 180's Motion to Dismiss.

DATED: June 6, 2006

Respectfully submitted,

LOGAN SIMIOS and VICKY STEVENS and OMAR HASAN, individually and on behalf of all persons similarly situated

By:

   /s/ David Fish

One of Plaintiffs' attorneys

Shawn M. Collins
David J. Fish
Geoffrey B. Tichenor
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563

Norman B. Berger
Michael D. Hayes
VARGA BERGER LEDSKY HAYES & CASEY
224 South Michigan Avenue, Suite 350
Chicago, IL 60604